## Commissioners of Highways of the Township of Edwardsville et al., Appellees, v. Cleveland, Cincinnati, Chicago & St. Louis Railway Company et al., Appellants.

1. CONTEMPT, § 61*—*when defendant entitled to discharge.* In common-law proceedings, if defendant's sworn answer is sufficient, standing alone, to purge him of the alleged contempt, he is entitled to be discharged.

2. CONTEMPT, § 61*—*when by railroad company in failing to drain highway under crossing not purged by answer.* Contempt of a railroad company in failing to comply with a writ of mandamus requiring it to drain the highway at a point where it passes under an overhead crossing, is not purged by an answer setting up that a temporary injunction was issued restraining it from draining the highway in such a manner as to injure the property of an adjoining owner, which injunction it had not sought to dissolve, and also setting up that the jurisdiction over the construction of a different type of crossing is in the Public Utilities Commission, whether or not it appears that any attempt was made to obtain the consent of the commission to the erection of a different type of crossing.

3. CONTEMPT, § 78*—*when fine not so excessive as to warrant reversal.* A fine of $1,000 imposed upon each of two railroad companies for contempt in failing to drain the highway at a point where it passed under the track, *held,* while unnecessarily severe, not so excessive as to call for a reversal on the ground that the trial court had abused its discretion.

Appeal from the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding. Heard in this court at the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

October term, 1917.    Affirmed.    Opinion filed April 5, 1918.    Rehearing denied June 22, 1918.    *Certiorari* denied by Supreme Court (making opinion final).

D. E. KEEFE, for appellants; L. J. HACKNEY and FRANK L. LITTLETON, of counsel.

TERRY, GUELTIG & POWELL, for appellees.

MR. JUSTICE HIGBEE delivered the opinion of the court.

The appellant, Cleveland, Cincinnati, Chicago & St. Louis Railway Company, operates a line of railroad from Lenox in Madison county, to Hillsboro, in Montgomery county, Illinois, constructed in about 1903, which it leases from appellant, Chicago, Indianapolis & St. Louis Short Line Railway Company.

There is a public highway on the line between the towns of Edwardsville and Chouteau. The grade of the railroad where it crosses this highway was some 20 feet above the grade of the highway. The railway companies and the highway commissioners of these two towns entered into an agreement at the time the railroad was constructed whereby the railway companies were permitted to cross the highway above grade and to construct a concrete arch across the highway for the public to pass under the railroad. The grade of the railroad was not elevated quite enough to permit the concrete arch to have an opening sufficiently high for vehicles to pass through, and it was agreed that the railway companies might excavate and depress the highway under the arch to the depth of about 4 feet, and it was further agreed that the companies should keep the place where the highway was excavated properly drained. After the excavation was made and the archway completed, water in times of heavy rainfall and during the winter season would accumulate under the archway and to a greater or less degree interfere with the use of the highway at that point.

It appears that various suits were instituted against appellants before justices of the peace under the statute with reference to obstructing highways. It also appears that after such suits were commenced, appellants made some preparations and took some steps to drain the highway by the laying of a tile drain upon their right of way to what was known as the "Diversion Canal," but, before any considerable work was done, Mary Bender, who owned land adjoining the railroad right of way, applied for and obtained a temporary injunction without notice to appellants, restraining them from laying the tile upon their own right of way, for the reason it would bring additional water upon her land. An answer was afterwards filed to the bill for injunction, and the matter has since stood upon the bill and the answer, without any further steps being taken. It is not clear from the record when this injunction was issued, but it must have been prior to October, 1912. On the 9th day of October, 1912, appellees applied to the Circuit Court for a writ of mandamus to compel appellants to carry out their agreement and properly drain the highway under the arch. Appellants filed a demurrer to the petition for mandamus which was overruled. On January 25, 1916, appellants filed an answer to the petition. Upon a hearing before the court, the issues were found in favor of appellees and on February 24, 1916, the court entered an order awarding the writ of mandamus as prayed for in the petition. In the order directing the issuance of the writ, the court found that the writ of injunction theretofore issued at the suit of Mary Bender against appellants should be so modified as to permit appellants to do any work in the way of building ditches or connecting borrow pits, provided said work was not done in any manner which would cause injury to or cause water to flow upon the lands of said Mary Bender, which would not naturally flow there. A writ of mandamus was issued on June 21,

1916, and served upon appellants June 25, 1916, directing them forthwith to proceed to take steps to construct the necessary ditches or drains to drain the depression in the highway within 90 days, unless, for good cause shown, further time should be given by the court. On April 11, 1917, appellees filed a petition for a citation against appellants to show cause why they should not be held in contempt of court for failure to obey such order and writ of mandamus. On May 1, 1917, appellants filed their answer to such petition, reciting that after complaints had been made against them in the justice courts, their engineers determined that the only possible or feasible way of relieving the situation was by putting in the drainpipe hereinbefore mentioned; that after levels had been taken and the work of setting the pipe actually begun, the Mary Bender injunction was issued whereby the work undertaken was stopped and prevented by process of law; that after conference with Mary Bender and her attorneys it was agreed that the work might go forward in a certain manner, but appellants' engineers reported that to carry on the work in the manner agreed upon, it was necessary to deepen a certain "cattle pass" which Mary Bender refused to permit. The answer further recites that appellants' engineers then devised a plan to construct an approach up to and over the right of way and that land was purchased from an adjacent owner in such a quantity as to afford an easy approach up to and over the right of way of appellants constituting a grade crossing; that appellants were then advised by their attorneys that they had no authority to establish such a grade crossing without first having obtained the consent thereto of the Board of Public Utilities; that such board since its creation by the Act of June 26, 1913, has sole jurisdiction over the establishment of crossings and their grades and that any order made by the Circuit Court on February 24, 1916, or at any time

28     APPELLATE COURTS OF ILLINOIS.

Com'rs of Highways v. C., C., C. & St. L. Ry. Co., 211 Ill. App. 24.

since June 26, 1913, "with reference to affording or constructing a crossing that might relieve against the conditions complained of in this proceeding, would be null and void, and that the same might be challenged by any person interested"; and that because of these facts appellants had been unable to carry out and comply with the order of the Circuit Court of February 24, 1916. This answer was sworn to by counsel for appellants and was also supported by an affidavit of Hadley Baldwin, assistant chief engineer for one of the appellants, stating that he had visited the crossing in question, together with another civil engineer, W. C. Kegler, and counsel for appellants, and that it was then determined by them that the best solution of the conditions complained of was to leave the crossing beneath the railway and to construct an overhead crossing also, so that the public might have the advantage of both; that it was sought to have appellees consent to such an arrangement, but appellees refused to do so by reason of which refusal "the progress of bringing about the crossing has been retarded." Upon consideration the court found appellants guilty of contempt of court for failure to obey the writ of mandamus issued by the court, imposed a fine of $1,000 on each of them and entered judgment in favor of the People of the State of Illinois against appellants for $2,000 and the costs of the suit. From that judgment the railways appealed to this court.

It is insisted by counsel for appellants that the answer squarely met and denied the alleged contempt, and that this being a contempt proceeding at common law, they should have been discharged on their answer. It is the rule in common-law proceedings, that if the defendant's sworn answer is sufficient, standing alone, to purge him of the alleged contempt, he is entitled to be discharged. (*Oster v. People,* 192 Ill. 473; *Stull v. People,* 173 Ill. App. 512.) Appellants also contend that the answer discloses their inability

to comply with the order of the court, and that they did not wilfully disregard the order of the court, and are therefore not in contempt. These contentions are but an elaboration of the first contention and they may all be considered together. Counsel based their contention that the answer purges appellants of any contempt, upon two grounds, namely: First, that the writ of mandamus commanded them to do what the Bender writ of injunction, issued by the same court, restrained them from doing; and second, that the Board of Public Utilities had full jurisdiction over the matter of constructing a crossing over the railroad, and the court had no authority to award the writ. It appears that the writ of injunction had been issued before the hearing on the petition for the writ of mandamus, and that fact seems to have been urged as a matter of defense to the petition for the mandamus. In the writ of injunction they are restrained from draining the roadway in such a manner as will cause injury to or water to flow upon the lands of Mary Bender, which would not naturally flow there. The mandamus does not confine them to any one way of draining the land and the answer here does not disclose that any attempt was made to drain the highway in any manner except along the right of way and does not recite that it was impossible to construct a drain sufficient for the purpose without causing the injury to the Bender land or cause water to flow thereon which would not naturally flow there. The injunction was issued without notice to appellants and after answer was filed by appellants no effort was made by them to dissolve this temporary injunction, but they were satisfied to allow it to remain and now ask advantage of that situation.

It would appear that an attempt in good faith on the part of appellants to comply with the requirements of the order for mandamus would have required some effort on their part to cause the injunction to

be dissolved. Neither does the answer show any effort on the part of appellants to obtain the consent of the Board of Public Utilities to construct an overhead crossing. But, if it had done so, this fact would have constituted no defense in this case as the writ of mandamus did not direct them to construct an overhead crossing but to drain the archway. The order was rendered February 24, 1916, the writ of mandamus was issued June 16, 1916, and the present petition filed April 11, 1917, and during all this time the answer discloses little, if any, effort on the part of appellants to comply with the true intent of the order or writ and no extension of time to permit such compliance was asked for by them. From the order awarding the writ of mandamus no appeal or writ of error was prosecuted and the judgment therefore cannot be questioned in this proceeding. *Burdette v. Munger,* 144 Ill. App. 164. The proofs do not appear to show an attempt in good faith on the part of appellants to comply with that order and therefore the order of the court below finding defendants guilty of contempt of court should be sustained.

While it appears to us that the fines inflicted upon appellants were unnecessarily severe, and that fines in lesser amounts would have as well subserved the ends of justice, yet this was a matter which must be left largely to the discretion of the trial court, and the amounts imposed are not so excessive as to call for a reversal of the judgment by this court for that reason alone.

Judgment affirmed.

*Affirmed.*