STATE EX REL. MURPHY, RELATOR, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 7,413.)

(Submitted February 13, 1935.   Decided March 2, 1935.)

[41 Pac. (2d) 1113.]

210

*Mr. Harlow Pease,* for Relator, submitted a brief and argued the cause orally.

*Mr. Harry Meyer,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Original application for writ of review by the state, on the relation of Francis Murphy, against the district court of the second judicial district in and for the county of Silver Bow, and Benjamin E. Berg, Judge, presiding.

The relator was adjudged guilty of contempt by the district court and by this proceeding seeks to have the judgment annulled. From the record, it would appear that on January 16, 1933, Regina Murphy was awarded a decree of divorce from this relator, custody of two minor children, and alimony in the sum of $50 a month. On June 21, 1934, she filed in the district court her affidavit charging relator with contempt in failing to pay alimony, but on the hearing had, relator was adjudged not guilty.

On December 21, 1934, Regina Murphy filed an affidavit showing that the relator was then in default in the sum of $355. Except as to the amount due as alimony, the charges in this affidavit are identical with those contained in the June affidavit; therein the affiant seeks to forestall any attempt to prevent conviction by showing inability to pay, in that she alleges that at the time of the decree Murphy was earning $150 per month as secretary of the Butte Association of Credit Men, and was able to make the payments as provided in the decree. It is then alleged "that, as affiant is informed and believes,

said defendant is still earning the said sum of $150 per month, but that, in order to avoid the payments of alimony, * * * permitted his second wife to act as secretary in his place and to receive said salary; * * * that, as affiant is informed and believes, the position is in truth and in fact held by the said defendant, * * * and all work * * * is done by the defendant," but the money is paid to the wife in order to avoid the payment of alimony, and "by reason of said facts the defendant has been and is now able to make said payments."

An order to show cause why Murphy should not be adjudged in contempt was issued and served upon defendant Murphy, and thereafter he appeared specially and moved to quash the service on the ground that no copy of the affidavit was served upon him with the order. This motion was overruled, whereupon the defendant moved to strike from the affidavit the above recitations on the ground that such subject matters had been once adjudicated. It is said in his petition here that this motion was made without prejudice to his motion to quash. This motion was denied, and the defendant states that he was then compelled to plead to the charge of which he had theretofore been acquitted. He entered a plea of not guilty and a hearing was had, at the close of which the court declared: "I don't know if I have the power to make the order I am going to make, but I am going to make it." The court then adjudged the defendant guilty of contempt and sentenced him to five days in jail and to pay a fine of $50, on default of which payment he was to be confined at the rate of one day for each $2 of the fine, but stayed execution until February 1, during which stay the defendant could purge himself of the contempt by paying into court $100 for the benefit of the plaintiff. The court closed its remarks with the statement, "It is the only way I can see to force any payment at all."

Relator first asserts that the court was without jurisdiction ▮▮ by reason of the failure to serve a copy of the affidavit upon him with the order to show cause. Service of process affects only jurisdiction over the person and may be waived,

and, by appearing and contesting the application on the merits, the defendant waived any defect in service, if any defect there was. When a party desires to challenge the court's authority, he must do so by special appearance and "keep out of court for all other purposes" (*Hinderager* v. *MacGinniss*, 61 Mont. 312, 202 Pac. 200, 202; *Gravelin* v. *Porier*, 77 Mont. 260, 250 Pac. 823), and he cannot preserve his rights by reservation (*State ex rel. Bingham* v. *District Court*, 80 Mont. 97, 257 Pac. 1014).

If, as contended, the court erred in refusing to strike the allegations of fraud in concealing defendant's earnings from the affidavit or motion to quash, on the ground that defendant had been once in jeopardy on those charges, it was nonprejudicial error, for no evidence was adduced in support of the charges. Disregarding the charges, the affidavit was sufficient to charge contempt, for it shows the decree for alimony, default in payment, and the amount due the plaintiff, and it was not necessary that the affiant show the defendant's ability to pay, nonability being a defense by which the defendant may purge himself of the apparent contempt. (*In re McCarty*, 154 Cal. 534, 98 Pac. 540.) While the former acquittal may constitute an adjudication that the defendant did not fraudulently transfer his position and earnings to his second wife, it cannot bar subsequent proceedings for contempt; each month's default constituted ground for such a proceeding.

It is next asserted that the evidence failed, as a matter of law, to establish wilful disobedience of the decree. The plaintiff established a prima facie case by showing the original decree and failure to comply therewith. (*In re McCarty*, supra.) The defendant then showed that, during the period covered, he had been unable to secure regular employment and had received but little over $100, of which he paid $20 to the plaintiff; that immediately after his acquittal in June, he was arrested on a grand larceny charge preferred by plaintiff's brother, and was compelled to pay $50 to an attorney to represent him on preliminary hearing; and that the justice of the

peace exacted $2.50 for filing his bond. He further testified that he paid the balance of his small earnings for house rent and necessities of the home, though he admitted that his second wife was taking care of such charges and he could have paid the money for the use of his first wife and her children.

Under the rule generally prevailing, this testimony might be sufficient to purge the defendant of contempt. (See note to *Messervy* v. *Messervy*, 85 S. C. 189, 67 S. E. 130, 137 Am. St. Rep. 813, 30 L. R. A. (n. s.) 1001.) "It is neither a crime nor offense to refuse to comply with an order of court when it is not in the power of the party to do so." (*In re Cowden*, 139 Cal. 244, 73 Pac. 156.) However, in this jurisdiction, and in New York, it is held that in such a proceeding as this the defendant cannot purge himself of contempt, by showing inability to pay, as his remedy is by an application to modify the order or decree for alimony on a change in his condition, the court having determined his ability on rendering the original decree. (See above note citing New York cases, and *State ex rel. Nixon* v. *District Court*, 14 Mont. 396, 40 Pac. 66, and *Nixon* v. *Nixon*, 15 Mont. 6, 37 Pac. 839; also, *State ex rel. Bordeaux* v. *District Court*, 31 Mont. 511, 79 Pac. 13; *State ex rel. Scott* v. *District Court*, 58 Mont. 355, 192 Pac. 829.) This is a harsh rule and cases may arise wherein it should not be applied, but in the instant case it appears that the defendant had once been imprisoned for contempt, and once acquitted, and that six months elapsed after his acquittal before the plaintiff again sought the aid of the court in the enforcement of a decree intended to provide support for two young children for whose existence this defendant was responsible. In the circumstances it would seem that the declaration of this court in the *Bordeaux Case,* above, is applicable: "If he could not, by stress of circumstances, comply with the order of the court, it was his duty, for his own protection, to go into court, relate the circumstances, and pray for a revocation or modification of the order directing him to pay alimony."

But defendant contends that the judgment here is void because it is a coercive order based on an assumption of

present ability to pay. We have two sections of the Code providing for judgment in contempt proceedings; the first empowers the court to impose a fine not exceeding $500, or sentence the offender to imprisonment not exceeding five days, or both (sec. 9917, Rev. Codes 1921)—this by way of punishment for the contempt; the second is, ''when the contempt consists in the omission to perform an act which is yet in the power of the person to perform, he may be imprisoned until he shall have performed it'' (sec. 9918, Id.)—this latter punishment is coercive. Under this latter section, inability to perform is a good defense, unless it appears that the person charged has voluntarily and contumaciously brought upon himself the disability (*State ex rel. McLean* v. *District Court*, 37 Mont. 485, 97 Pac. 841, 15 Ann. Cas. 941), and, under it, regardless of whether or not the defendant has sought a revocation or modification of the decree, a judgment committing a defendant to jail until he pays alimony, when the evidence discloses inability to perform, is void (*State ex rel. Scott* v. *District Court*, above; see, also, *Ex parte Burns*, 83 Mont. 200, 271 Pac. 439).

Here, however, the court made no such order; the penalty imposed was fixed within the limit prescribed in section 9917, above, and, while it is coercive in that it is the result of an attempt to compel payment of a portion of the overdue alimony, there is no order that the defendant be confined until he make such payment; on the contrary, the court suspended execution of the judgment for a period in order to permit such payment by way of a purge. ''It is no objection to the order * * * adjudging the defendant in contempt that the court suspended final action for a brief period to enable the defendant to comply with the original order. * * * That was an act of grace to the defendant.'' (*People ex rel. Day* v. *Bergen*, 53 N. Y. 404.)

''In Montana the appellate court will not interfere with the judgment of the lower court in the absence of a showing that its action was so arbitrary and unlawful as to be tyrannical. (*State ex rel. Thelen* v. *District Court*, 51 Mont. 337,

152 Pac. 475.)'' (Note 36 (a), 13 C. J. 105.) This is because our statute declares that ''the judgment and orders of the court or judge, made in cases of contempt, are final and conclusive, and there is no appeal; but the action of a district court or judge can be reviewed on a writ of certiorari by the supreme court.'' (Sec. 9921, Rev. Codes 1921.) But ''the review upon this writ cannot be extended further than to determine whether the inferior tribunal * * * has regularly pursued the authority of such tribunal.'' (Sec. 9843, Id.)

''The writ cannot be used to correct errors committed in the ▉ exercise of jurisdiction. (*State ex rel. King* v. *District Court*, 24 Mont. 494, 498, 62 Pac. 820.) * * * If the charges are unsupported by the evidence, or the findings are contrary to all the substantial evidence, or where the decision below has no evidence to support it, the question then becomes one of law, and the evidence may be reviewed to determine if such is the fact, but the court cannot review the evidence to determine the preponderance thereof'' (*State ex rel. Griffiths* v. *Mayor*, 57 Mont. 368, 188 Pac. 367, 368); it is limited in its inquiry to the question whether the application is properly made, and, if so, whether the district court or judge exceeded its or his jurisdiction (*State ex rel. Murphy* v. *District Court*, 10 Mont. 401, 25 Pac. 1053).

Having determined that the application was properly made and that the district court did not exceed its jurisdiction, the writ is dismissed.

ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, absent on account of illness, takes no part in the foregoing decision.

Rehearing denied March 14, 1935.